IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| PETER BARKER and <br> JESSICA BARKER, <br><br> *Plaintiffs*, <br><br> v. <br><br> DREAM YACHT CHARTER and <br> DREAM YACHT AMERICAS, INC., <br><br> *Defendants*. | * <br> * <br> * <br> *    Civil Action No. RDB-25-212 <br> * <br> * <br> * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

On the morning of March 28, 2023, Plaintiffs Peter and Jessica Barker were sailing through the islands surrounding Raiatea, French Polynesia, on a fifty-five-foot catamaran chartered from Defendants Dream Yacht Charter, a Mauritian corporation, and Dream Yacht Americas, Inc., a Maryland corporation and a wholly-owned subsidiary of Dream Yacht Charter. *See generally* (ECF No. 1). Suddenly, Peter fell three or four feet through a floor into the hull of the catamaran and suffered severe leg injuries. *See generally* (*id.*). Ultimately, this two-count maritime negligence claim followed on January 22, 2025. (ECF No. 1.) In Count One, Peter alleges negligence against Defendants, the catamaran's owners, for failure to keep the ship in safe conditions. (*Id.* ¶¶ 36–45.) In Count Two, Jessica, Peter's wife, sues for loss of consortium relating to her husband Peter's injuries. (*Id.* ¶¶ 46–48.) In response, Defendants jointly filed a Motion to Dismiss for *Forum Non Conveniens* (ECF No. 12). Dream Yacht Charter also filed a separate Motion to Dismiss for Lack of Personal Jurisdiction and Improper Service,

pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(4), and 12(b)(5).[1] (ECF No. 13.) On February 13, 2026, this Court heard arguments on both motions. (ECF No. 27.) This Memorandum and separate Order address Dream Yacht Charter's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Service.[2] (ECF No. 13.) This Court has jurisdiction pursuant to both 28 U.S.C. § 1333 and § 1332.[3] For the reasons stated on the record at the hearing (ECF No. 27) and as further explained herein, this Motion of Dream Yacht Charter (ECF No. 13) is DENIED.

## BACKGROUND

### I.   Factual History

The Court gave a thorough accounting of the facts in this case on the record at the hearing of February 13, 2026. (ECF No. 27.) As such, this Memorandum Order lists only those facts necessary to dispose of Dream Yacht Charter's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Service (ECF No. 13).

#### a.   *The Booking Contract*

Plaintiffs Peter and Jessica Barker are a married couple from California. (ECF No. 1 ¶ 11.) In March 2023, along with their children and friends, the Barkers took a trip to Raiatea,

---

[1] Defendant Dream Yacht Americas, Inc., did not join in this Motion. Instead, it has filed an Answer. (ECF No. 14.)

[2] The Motion to Dismiss for *Forum Non Conveniens* remains pending pursuant to the Court's supplemental briefing schedule, as laid out during the hearing of February 13, 2026.

[3] Federal district courts have subject matter jurisdiction over all maritime claims, including this one. *See* 28 U.S.C. § 1333. Separately, the Court also has subject matter jurisdiction over this case because there is complete diversity of parties—Plaintiffs are citizens of California, Defendant Dream Yacht Charter is incorporated and has its principal place of business in Mauritius, Defendant Dream Yacht Americas is incorporated and has its principal place of business in Maryland—and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332.

French Polynesia, where for a week they would self-crew a chartered, fifty-five-foot catamaran through the islands surrounding Raiatea. (Id. ¶¶ 11–13.) To secure the catamaran, one member of their traveling party, Jon Ziskind, entered a bareboat[4] charter contract with Defendants Dream Yacht Charter, a company incorporated under the laws of the Republic of Mauritius, with its principal place of business in Floreal, Mauritius (ECF No. 12 at 27; ECF No. 13 at 19), and Defendant Dream Yacht Americas, Inc., a wholly-owned subsidiary of Dream Yacht Charter, incorporated in and with its principal place of business in Maryland (ECF No. 12 at 29). *See* (ECF No. 12-2). In the "contracting parties" section of the booking contract, Ziskind is the sole "client," while Dream Yacht Charter, with an Annapolis, Maryland address and phone number, is the "charter company." (*Id.*) Beyond that point, the booking contract (ECF No. 12-2) is not a model of clarity with respect to how it refers to Defendants. Both Dream Yacht Charter and Dream Yacht Americas, Inc., are named at different parts of the contract. (*Id.*) As relates to Dream Yacht Charter, specifically, the booking contract sometimes uses a Maryland mailing address and at other times a Mauritian one. (*Id.*) The contract's header includes Dream Yacht Charter's logo, website address, and name, as well as the same Annapolis, Maryland mailing address as is used for the "contracting parties" section. (*Id.*) At the bottom of the first page of the booking contract, in the signature block, the "service provider" listed is Dream Yacht Charter, but this time with a Mauritian mailing address and telephone number. (*Id.*)

---

[4] In a bareboat charter, the charterer hires the vessel without a crew. *Matter of Wilson Yachts, LLC*, 605 F. Supp. 3d 695, 702–03 (D. Md. 2022) (citing *The Barnstable*, 181 U.S. 464, 468 (1901)).

### b. *The March 2023 Trip and Peter's Injuries*

On March 25, 2023, the Barkers and their traveling party, including Ziskind, picked up the chartered catamaran in Raiatea, French Polynesia, and then sailed the boat, captained by Jon Ziskind, through the islands surrounding Raiatea. (ECF No. 1 ¶¶ 11–13.) On the morning of March 28, 2023, while the group was unmooring and preparing to sail to the next island, Peter went below deck to close the hatches and windows to prevent water coming aboard during the day's sailing. (*Id.* ¶ 14.) As he was closing a window below deck, the floor underneath him gave way. (*Id.* ¶ 15.) Peter fell three or four feet through the floor into the catamaran's hull. (*Id.*) Peter immediately noticed severe injuries to his legs. (*Id.*) The group rushed Peter back to Raiatea. (*Id.* ¶ 18.) From there, Peter and Jessica flew back to their home in Santa Barbara, California, where Peter underwent five surgeries over two months to treat his injuries, plus months of additional physical therapy. (*Id.* ¶¶ 19–26.)

### II. Procedural History

On January 22, 2025, the Barkers filed this two-count Complaint against Defendants Dream Yacht Charter and Dream Yacht Americas, Inc. (ECF No. 1.) Count One alleges that Defendants were negligent in maintaining a safe boat, which caused Peter's injuries. (*Id.* ¶¶ 36–45.) Count Two is brought by Jessica, as Peter's wife, for her loss of consortium with her husband for the same putative negligence. (*Id.* ¶¶ 46–48.) Plaintiffs served process for both Defendants on Dream Yacht Americas, Inc.'s registered agent, Jonathan P. Kagan of Annapolis, Maryland. (ECF No. 13 at 21–23; ECF No. 4.) Kagan is not the registered agent of parent-company Dream Yacht Charter. (ECF No. 13 at 22.)

After this Court granted a consent motion to extend time, *see* (ECF No. 7), Defendants Dream Yacht Charter and Dream Yacht Americas, Inc., jointly filed a Motion to Dismiss for *Forum Non Conveniens*.[5] (ECF No. 12.) Defendant Dream Yacht Charter separately filed this pending Motion to Dismiss for Lack of Personal Jurisdiction and Improper Service of Process. (ECF No. 13.) This Court held a Motions Hearing on both Motions on February 13, 2026.

## STANDARD OF REVIEW

### I. Federal Rule of Civil Procedure 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to seek dismissal of a suit for a court's lack of personal jurisdiction. A Rule 12(b)(2) challenge creates a preliminary question for the Court. *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016). The plaintiff bears the burden of demonstrating personal jurisdiction. *Id.* At the motion-to-dismiss stage, and when the Court has not held an evidentiary hearing or permitted discovery on the jurisdictional issue, the plaintiff need only make a prima facie showing of jurisdiction to survive a 12(b)(2) challenge.[6] *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.2d 211, 226 (4th Cir. 2019). Unlike a motion brought pursuant to Rule 12(b)(6), "the court may also consider affidavits submitted by both parties, although it must resolve all factual disputes and draw all reasonable inferences in favor of the party asserting jurisdiction." *Id.* Further, the Court must "take all

---

[5] That Motion (ECF No. 12) remains pending before the Court subject to further briefing. (ECF No. 27.)

[6] A threshold determination that a federal court has personal jurisdiction over the parties does not settle the issue; a plaintiff overcoming the initial threshold will eventually be required to prove the existence of jurisdiction by a preponderance of the evidence. *Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 n.5 (4th Cir. 2005) (citation omitted).

disputed facts and reasonable inferences in favor of the plaintiff." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).

## II.     Federal Rule of Civil Procedure 12(b)(4)

Federal Rule of Civil Procedure 12(b)(4) permits dismissal for insufficient process. Typically, a Rule 12(b)(4) motion asserts a defect in the form or substance of process, rather than challenging the method of service. *Srivastava v. Kelly Servs., Inc.*, No. LKG-19-3193, 2022 WL 2716868, at *2 (D. Md. July 13, 2022); *Allen v. Cort Trade Show Furnishings*, No. ELH-19-2859, 2021 WL 1312898, at *2 (Md. Apr. 8, 2021). A federal court may exercise personal jurisdiction over a defendant only after the defendant has received valid service of summons. *Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984); *see also Sparks v. Transit Mgmt. of Cent. Md., Inc.*, No. ELH-21-1598, 2021 WL 5742336, at *3 (D. Md. Dec. 2, 2021) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."). Once a defendant has challenged service under Rule 12(b)(4), the plaintiff bears the burden of demonstrating valid service pursuant to the requirements of Federal Rule of Civil Procedure 4. *Fraley v. Meritus Med. Ctr., Inc.*, No. RDB 20-1023, 2021 WL 1215079, at *2 (D. Md. Mar. 31, 2021).

## III.    Federal Rule of Civil Procedure 12(b)(5)

Because a federal court may exercise personal jurisdiction over a defendant only after that defendant has been properly served, Rule 12(b)(5) permits a motion to dismiss for insufficient service of process. *See Allen*, 2021 WL 131898, at *2 (citing *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987); *Hawkins*, 935 F.3d at 228. "Once service has been contested, the plaintiff bears the burden of establishing the validity of service pursuant

6

to Rule 4." *Parker v. Am. Brokers Conduit*, 179 F. Supp. 3d 509, 515 (D. Md. 2016) (citing *O'Meara v. Waters*, 464 F. Supp. 2d 474, 476 (D. Md. 2006)). While in some cases the failure to strictly comply with Rule 4 may not invalidate service of process if the defendant acquires actual notice of the pending action, "the plain requirements for the means of effecting service of process may not be ignored." *Armco*, 733 F.2d at 1089.

## ANALYSIS

### I. The Court has Specific Personal Jurisdiction over Defendant Dream Yacht Charter

Defendant Dream Yacht Charter argues that the Court does not have personal jurisdiction over it as it is an entity incorporated under the laws of Mauritius and with its principal place of business in Floreal, Mauritius. (ECF No. 13 at 9–14.) Specifically, it argues that it lacks the minimum contacts with Maryland, the forum State, necessary to make lawful this Court's exercise of jurisdiction. (*Id.* at 9–14.)

Federal Rule of Civil Procedure 4(k)(1)(A) permits a federal district court to exercise personal jurisdiction over a defendant according to the law of the state in which the federal court sits. *See Carefirst*, 334 F.3d at 396 (citing Fed. R. Civ. P. 4(k)(1)(A)). As such, a district court may assert jurisdiction over a nonresident defendant when (1) the state's long-arm statute permits it and (2) exercising jurisdiction comports with the limits of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Id.* (citing *Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001)). These inquiries merge, and federal district courts analyze solely the federal due process concerns, because Maryland courts read Maryland's long-arm statute, Md. Code Ann., Cts. & Jud. Proc. § 6-103(b) (West 2025), as "coextensive" with the Fourteenth Amendment's due process

7

limits, *Beyond Sys., Inc. v. Realtime Gaming Holding Co.*, 878 A.2d 567, 576 (Md. 2005) (collecting cases). *See Carefirst*, 334 F.3d at 396–97 (citation omitted) (treating the statutory and constitutional questions as one).

In *International Shoe Co. v. Washington*, 326 U.S. 310, 316–17 (1945), the Supreme Court explained that the Due Process Clause of the Fourteenth Amendment allows a state court to exercise jurisdiction over a defendant who has such "contacts" with the forum State that exercising jurisdiction "does not offend traditional notions of fair play and substantial justice." This inquiry centers on the "nature and extent of 'the defendant's relationship to the forum State.'" *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (quoting *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal.*, 582 U.S. 255, 262 (2017)).

In the eighty-one years since *International Shoe*, the Supreme Court has recognized that there are two kinds of personal jurisdiction: general and specific. *Id.* (citation omitted). Only specific personal jurisdiction is at issue here.[7] Specific personal jurisdiction exists where the "'suit arise[s] out of or relate[s] to the defendant's contacts with the forum.'" *Id.* (citation omitted) (alterations in original). For specific jurisdiction to be proper, the foreign defendant must have taken some action by which it exhibited "purposeful availment" of benefits and protections of doing business in the forum State. *Id.*; *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). As the Supreme Court recently explained in *Ford Motor Company*, specific

---

[7] A state court may exercise general personal jurisdiction over a defendant which is "essentially at home" in that State. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). In all but the exceptional case, a corporation is essentially at home—and therefore subject to general personal jurisdiction—in the states where it is incorporated and has its principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137, 139 n.19 (2014). Plaintiffs concede that general personal jurisdiction is not at issue here. (ECF No. 22 at 5.)

8

personal jurisdiction exists where the defendant's contacts "show that [it] deliberately 'reached out beyond' its home—by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there." *Id.* (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)).

The United States Court of Appeals for the Fourth Circuit uses a three-part test to determine whether specific jurisdiction exists over a defendant. *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (internal citation and quotations omitted). A court considers: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Id.*

The booking contract clearly lists Dream Yacht Charter as the "charter company" with an address in Annapolis, USA. (ECF No. 12-2.) Despite being a corporation under the laws of Mauritius, Dream Yacht Charter clearly availed itself of the benefits of doing business in Maryland through the use of its subsidiary in Annapolis, Maryland. Dream Yacht Charter's argument—that its wholly-owned subsidiary, Dream Yacht Americas, Inc., is separate from itself—is unavailing. It appears from the booking contract that the vessel the yacht Barkers sailed upon is owned by Dream Yacht Charter, not Dream Yacht Americas, Inc. (ECF No. 12-2 at 2.) More to the point, the booking contract contains Dream Yacht Charter's logo, the same as exists on its publicly-available website: dreamyachtcharter.com.[8] Similarly, when one performs a Google search of "Dream Yacht Americas, Inc.", the "Sponsored Result" from

---

[8] The Court may take judicial notice of these facts as they are publicly available.

Google is "Dream Yacht Official Website." Indeed, Dream Yacht Americas, Inc., does not appear to have its own website. Rather, searching for that entity on the Internet directs one to Dream Yacht Charter. Further, on the Dream Yacht Official Website, there is a page titled "Our Offices." One of those offices is "Dream Yacht Charter USA – Annapolis," with the address of 7082 Bembe Beach Road, Annapolis, MD 21403. This is the same address listed for Dream Yacht Charter *and* Dream Yacht Americas, Inc., in the booking contract and on the pleadings. (ECF No. 12-2.) To put it plainly, these do not appear, practically speaking, to be truly distinct entities, even if as a matter or corporate structure Dream Yacht Charter is the parent and Dream Yacht Americas, Inc., is the wholly-owned subsidiary.

At this stage, and without the benefit of discovery, it would be premature to dismiss this case for lack of personal jurisdiction based on Dream Yacht Charter's claim that it has no contacts with Maryland. Put simply, the fact that Dream Yacht Charter has a subsidiary in Annapolis, through which it makes booking contracts with American customers, combined with a website which says that one of its offices is in Annapolis, at the same location listed on the booking contract, is more than enough to show purposeful availment. Indeed, to put in the terms used by the Supreme Court in the recent *Ford Motor Company* case, advertising online that a company has an office in Annapolis from which to contract with American customers is evidence that the Mauritian parent company "reached out beyond its home" for the purpose of "exploiting this market." *Ford*, 592 U.S. at 359 (cleaned up). As such, the motion-to-dismiss for lack of personal jurisdiction is DENIED.[9]

---

[9] The briefing of both parties, *see* (ECF No. 13 at 11–14; ECF No. 22 at 5), as well as the colloquy at the hearing of February 13, 2026, discussed whether or not the Barkers can pierce the corporate veil between the wholly-owned subsidiary, Dream Yacht Americas, Inc.,

## II.     Dismissal for Improper Service of Process is Not Warranted

Defendant Dream Yacht Charter also argues that this Court should dismiss this case because it was not properly served under Federal Rules of Civil Procedure 12(b)(4) and 12(b)(5). As the United States Court of Appeals for the Fourth Circuit explained in *Armco, Inc. v. Penrod-Stauffer Building Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984), regarding Federal Rule of Civil Procedure 4, "[w]hen the process gives the defendant *actual notice* of the pendency of the action, the rules, in general, are entitled to a liberal construction." *Id.* "When there is actual notice, every technical violation of the rule or failure of strict compliance may not invalidate the service of process." *Id.* Here, the simple fact is that Dream Yacht Charter obviously had actual notice of the pendency of this lawsuit, as it has fully participated in the defense of the case. Even though the Barkers did not serve Dream Yacht Charter at its Mauritian location, it was not prejudiced by any possible error in service. The Motion to Dismiss (ECF No. 13) is accordingly denied.

---

and its parent, Dream Yacht Charter. Given that the Court finds that personal jurisdiction exists, it need not undertake this analysis.

## CONCLUSION

For the reasons on the record at the hearing of February 13, 2026, and as further explained above, it is this 13th day of February 2026 hereby ORDERED that Defendant Dream Yacht Charter's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Service (ECF No. 13) is DENIED.

A separate Order follows.

/s/
Richard D. Bennett
United States Senior District Judge