IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| PETER BARKER and<br>JESSICA BARKER, | * | |
| | * | |
| *Plaintiffs*, | * | |
| v. | | Civil Action No. RDB-25-212 |
| | * | |
| DREAM YACHT CHARTER and<br>DREAM YACHT AMERICAS, INC., | * | |
| *Defendants*. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiffs Peter and Jessica Barker are a married couple from California. (ECF No. 1 ¶¶ 1–3, 11.) Along with their children and friends, the Barkers planned to take a trip in March 2023 to the South Pacific. (*Id.* ¶¶ 11–13.) As many of the thirteen people on the trip were experienced sailors, including family friend Jonathan Ziskind, a former professional sailor, the group decided on a bareboat charter[1] of a fifty-five-foot catamaran from Defendants Dream Yacht Charter and Dream Yacht Americas, Inc. (*Id.* ¶¶ 11–13.) Dream Yacht Charter is a company incorporated under the laws of the Republic of Mauritius, with its principal place of business in Floreal, Mauritius. (ECF No. 12 at 27; ECF No. 13 at 19.) Dream Yacht Americas, Inc., which is incorporated and has its principal place of business in Annapolis, Maryland, is a wholly-owned subsidiary of Dream Yacht Charter. (ECF No. 12 at 29.) Significantly, the

---

[1] In a bareboat charter, the charterer hires the vessel without a crew. *Matter of Wilson Yachts, LLC*, 605 F. Supp. 3d 695, 702–03 (D. Md. 2022) (citing *The Barnstable*, 181 U.S. 464, 468 (1901)). The charterer of a bareboat charter is considered the owner of the vessel for the charter term. *Id.* at 702–03 (citing *The Barnstable*, 181 U.S. at 468).

Barkers did not charter the catamaran themselves. Mr. Ziskind was the only contracting party. (*Id.* at 22.) He personally entered into a bareboat charter contract with Defendants Dream Yacht Charter and Dream Yacht Americas, Inc. (*Id.*) As relevant here, the bareboat charter contract contains the following "Governing Laws" clause: "[a]ny legal action arising under or in connection with this contract will be adjudicated in Port Louis, Mauritius." (*Id.* at 24.)

On the morning of March 28, 2023, the Barkers and their traveling party were sailing through the islands surrounding Raiatea, French Polynesia, on the chartered fifty-five-foot catamaran. (ECF No. 1 ¶¶ 11–14.). Suddenly, Peter fell three or four feet through a floor into the hull of the catamaran and suffered severe leg injuries. (*Id.* ¶¶ 14–16.) Ultimately, this two-count maritime negligence claim was filed on January 22, 2025. (ECF No. 1.) In Count One, Peter Barker alleges negligence against Defendants, as the catamaran's owners, for failure to keep the ship in safe conditions. (*Id.* ¶¶ 36–45.) In Count Two, Jessica Barker sues Defendants for loss of consortium arising out of her husband's injuries. (*Id.* ¶¶ 46–48.)

Now pending is the Motion to Dismiss for *Forum Non Conveniens* filed by both Defendants. (ECF No. 12.) Defendant Dream Yacht Charter also filed a separate Motion to Dismiss for Lack of Personal Jurisdiction and Improper Service, pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(4), and 12(b)(5). (ECF No. 13.) Defendant Dream Yacht Americas, Inc., did not join that Motion, but instead filed an Answer. (ECF No. 14.) On February 13, 2026, this Court held a hearing on both Motions. (ECF No. 27.) At the hearing, the Court denied Dream Yacht Charter's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Service. (ECF No. 27.) The Court followed up with a corresponding Memorandum Opinion and Order. (ECF Nos. 28, 29.) However, as to this pending Motion

to Dismiss for *Forum Non Conveniens* (ECF No. 12), filed jointly by both Defendants, the Court ordered supplemental briefing in response to the arguments developed by the parties in their briefs (ECF Nos. 12, 19, 23) and at the hearing. (ECF No. 30.) The parties have filed their supplemental arguments. (ECF Nos. 31, 32, 33.) The Motion (ECF No. 12) is now ripe.[2]

In the pending Motion to Dismiss for *Forum Non Conveniens* (ECF No. 12), Defendants assert that the "Governing Laws" provision in the bareboat charter contract is an enforceable forum-selection clause that binds the Barkers and requires dismissal of this case pursuant to the doctrine of *forum non conveniens. See* (ECF No. 12 at 10–11). The Barkers' only argument in response to this Motion is that they are not beholden to the terms of the bareboat charter contract, including the "Governing Laws" provision. (ECF No. 19 at 1.) They contend that the forum-selection clause does not bind them because they were not parties to the contract entered by Defendants and Mr. Ziskind[3] and because the terms within the contract were not "reasonably communicated" to them. (ECF No. 19 at 1.)

The Barkers' argument is wholly dependent on the reasonably communicated test. That rule states, in essence, that a passenger *on a cruise ship* is bound by the terms of his passage contract so long as the *cruise line* reasonably communicated the terms to him. *See, e.g., Caron v. NCL (Bahamas), Ltd.*, 910 F.3d 1359, 1367 (11th Cir. 2018). As the Barkers fully concede,

---

[2] This Court has jurisdiction pursuant to both 28 U.S.C. § 1332 and § 1333. Federal courts have subject matter jurisdiction over all maritime claims. *See* 28 U.S.C. § 1333. Separately, the Court also has subject matter jurisdiction over this case because the amount in controversy exceeds $75,000 and there is complete diversity of parties: Plaintiffs are citizens of California; Defendant Dream Yacht Charter is incorporated and has its principal place of business in Mauritius; and Defendant Dream Yacht Americas is incorporated and has its principal place of business in Maryland. *See* 28 U.S.C. § 1332.

[3] Mr. Ziskind is not named as a defendant in this case.

however, the reasonably communicated test derives singularly from cases involving cruise ships. It does not exist in the context of bareboat charters. (ECF No. 31 at 2.) Nevertheless, they argue that the Court should transplant the test to this context and apply it to this case. (ECF No. 19 at 5–10; ECF No. 31 at 2.) The Court holds that the reasonably communicated test does not apply in the context of bareboat charter contracts. Therefore, for the reasons stated on the record at the hearing (ECF No. 27) and expounded herein, Defendants Dream Yacht Charter and Dream Yacht Americas, Inc.'s Motion to Dismiss for *Forum Non Conveniens* (ECF No. 12) is GRANTED. This case is DISMISSED.

## BACKGROUND

### I.    Factual History

The Court gave a thorough accounting of the facts in this case on the record at the hearing of February 13, 2026. (ECF No. 27.) As such, this Memorandum Opinion provides only those facts necessary to dispose of Defendants' Motion to Dismiss for *Forum Non Conveniens* (ECF No. 12).

### a.  *The Booking Contract*

Plaintiffs Peter and Jessica Barker are a married couple from California. (ECF No. 1 ¶ 11.) In March 2023, along with their children and friends, the Barkers took a trip to Raiatea, French Polynesia. (*Id.* ¶ 11.) There, for a week, they would self-crew a chartered, fifty-five-foot catamaran through the islands surrounding Raiatea. (*Id.* ¶¶ 11–13.) To secure the catamaran, one member of their traveling party, Jon Ziskind, entered a bareboat charter[4]

---

[4] The parties agree that this was a bareboat charter. (ECF No. 31 at 7–8; ECF No. 32 at 2.)

contract with Defendant Dream Yacht Charter, a company incorporated under the laws of the Republic of Mauritius, with its principal place of business in Floreal, Mauritius (ECF No. 12 at 27), and Defendant Dream Yacht Americas, Inc., a wholly-owned subsidiary of Dream Yacht Charter, incorporated in and with its principal place of business in Annapolis, Maryland (*Id.* at 29). The contract lists Ziskind as to the sole "client." (*Id.* at 22.) He signed the contract on July 1, 2022. (*Id.* at 22.) It is undisputed that the Barkers are not signatories to the bareboat charter. Finally, as relevant here, the charter contract contains a "Governing Laws" provision, which states: "[a]ny legal action arising under or in connection with this contract will be adjudicated in Port Louis, Mauritius." (*Id.* at 24.)

### b. *The March 2023 Trip and Peter's Injuries*

On March 25, 2023, the Barkers and their traveling party, including Ziskind, picked up the chartered catamaran in Raiatea, French Polynesia, and then sailed the boat, captained by Jon Ziskind, through the islands surrounding Raiatea. (ECF No. 1 ¶¶ 11–13.) On the morning of March 28, 2023, while the group was unmooring and preparing to sail to the next island, Peter went below deck to close the hatches and windows to prevent water coming aboard during the day's sailing. (*Id.* ¶ 14.) As he was closing a window below deck, the floor underneath him gave way. (*Id.* ¶ 15.) Peter fell three or four feet through the floor into the catamaran's hull. (*Id.*) Peter immediately noticed severe injuries to his legs. (*Id.*) The group rushed Peter back to Raiatea. (*Id.* ¶ 18.) From there, Peter and Jessica flew back to their home in Santa Barbara, California, where Peter underwent five surgeries over two months to treat his injuries, plus months of additional physical therapy. (*Id.* ¶¶ 19–26.)

### II.    Procedural History

On January 22, 2025, the Barkers filed this two-count Complaint against Defendants Dream Yacht Charter and Dream Yacht Americas, Inc. (ECF No. 1.) Count One alleges that Defendants were negligent in maintaining a safe vessel and that the condition of the catamaran caused Peter Barker's injuries. (*Id.* ¶¶ 36–45.) Jessica Barker brings Count Two, alleging loss of consortium with her husband for the same putative negligence. (*Id.* ¶¶ 46–48.)

After this Court granted a consent motion to extend time, *see* (ECF No. 7), Defendants Dream Yacht Charter and Dream Yacht Americas, Inc., jointly filed the pending Motion to Dismiss for *Forum Non Conveniens*. (ECF No. 12.) Defendant Dream Yacht Charter separately filed a Motion to Dismiss for Lack of Personal Jurisdiction and Improper Service of Process. (ECF No. 13.) This Court held a Motions Hearing on both Motions on February 13, 2026. (ECF No. 27.) The Court denied Dream Yacht Charter's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Service of Process (ECF No. 13) at the hearing (ECF No. 27), which it followed with a Memorandum Opinion and Order. (ECF Nos. 28, 29.) As to the pending Motion to Dismiss for *Forum Non Conveniens* (ECF No. 12), however, the Court ordered supplemental briefing on the issue of whether non-signatories to a bareboat charter contract may be bound by the contract's forum-selection clause. (ECF No. 30.) The parties have submitted their supplemental briefs. (ECF Nos. 31, 32, 33.)

## STANDARD OF REVIEW

Federal courts apply federal law to forum-selection clauses in maritime contracts. *Great Lakes Ins. SE v. Raiders Retreat Realty Co.*, 601 U.S. 65, 67 (2024). The doctrine of *forum non conveniens* permits a federal district court to "dismiss an action on the ground that a court abroad is the more appropriate and convenient forum for adjudicating the controversy." *Sinochem Int'l*

*Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007). The doctrine is the proper way to enforce a mandatory forum-selection clause pointing to a foreign forum. *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 60 (2013). When a valid, binding forum-selection clause sets jurisdiction in a foreign forum, a district court must enforce the clause—the parties' bargained-for forum—by dismissing the case "in all but the most exceptional cases." *Id.* (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 37 (1988)). A court may consider evidence outside the pleadings in deciding whether to dismiss a case for *forum non conveniens*. *Van Cauwenberghe v. Bond*, 486 U.S. 517, 529 (1988) (internal citations omitted).

## ANALYSIS

The bareboat charter contract in this case, which was entered by non-party Jon Ziskind and Defendants on July 1, 2022, contains a "Governing Laws" provision that reads: "[a]ny legal action arising under or in connection with this contract will be adjudicated in Port Louis, Mauritius." (ECF No. 12 at 24.) Defendants argue that the "Governing Laws" provision is an enforceable, mandatory forum-selection clause that "vests exclusive jurisdiction" in Port Louis, Mauritius. (ECF No. 12 at 10.) They contend that the Barkers are bound by the bareboat charter agreement and that, pursuant to the doctrine of *forum non conveniens*, the Court should enforce the contract by dismissing the case. (*Id.*)

The Barkers do not dispute that this provision is a mandatory forum-selection clause setting jurisdiction in Port Louis, Mauritius. Similarly, they do not dispute that, if the forum-selection clause contract is found to be enforceable against them, the proper remedy would be dismissal of the case pursuant to the doctrine of *forum non conveniens. See Atl. Marine Const. Co.,*

571 U.S. at 60. Finally, and as noted above, the parties agree that this was a bareboat charter. (ECF No. 31 at 7–8; ECF No. 32 at 2.)

The Barkers' sole argument in opposition to the Motion to Dismiss is that the forum-selection clause is not enforceable against them because the terms of the booking contract were not "reasonably communicated" to them. (ECF No. 19 at 5–10.) This argument invokes the reasonably communicated test, a doctrine of consumer protection arising from the context of passenger tickets for cruise ships. *See, e.g.*, *Caron v. NCL (Bahamas), Ltd.*, 910 F.3d 1359, 1367 (11th Cir. 2018). The test states, in essence, that a passenger on a cruise ship is bound by the terms of the passage contract[5] so long as those terms are reasonably communicated to him. *See id.* To be clear, this test does not exist in the context of bareboat charter contracts. What is more, the Barkers have not rectified the inherent and important differences between these two contexts. Even so, they argue that the Court should apply the test in this case.

After a hearing on this Motion (ECF No. 27) and subsequent briefing of the parties (ECF Nos. 31, 32, 33), the narrow legal question before the Court has crystallized: does the reasonably communicated test, which derives from a line of cases involving passengers on cruise ships, apply to the separate context of bareboat charter contracts? This is an issue of first impression. As explained below, the Court holds that it does not.

### I.     The Reasonably Communicated Test, Which Derives from Cruise Ship Ticket Cases, Does Not Apply to Bareboat Charters for Yachts

The "reasonably communicated" test stems, originally, from the Supreme Court's 1897 decision in *The Majestic*, 166 U.S. 375, 381 (1897). There, passengers on *The Majestic*, an ocean

---

[5] That is, the cruise ship ticket.

liner of the White Star Line (the same shipping line that later owned *Titanic*), sued the ship's

owners when their luggage was damaged during their 1892 voyage from Liverpool to New

York City. *Id.* In response, the ship's owners argued that each passenger's award for ruined

luggage was limited to £10 because a liquidated damages clause in the booking contract had

set that amount as the maximum recovery. *Id.* at 381, 386. The Supreme Court held that the

provision did not bind the passengers because it "[was] not included in the contract proper, in

terms or by reference." *Id.* at 385.

Over time, federal courts have distilled the ruling from *The Majestic* into the modern

reasonably communicated test. *See, e.g.*, *Silvestri v. Italia Societa per Azioni di Navigazione*, 388 F.2d

11, 17 (2d Cir. 1968) (explaining that *The Majestic* and similar cases stand for the proposition

that a cruise line must reasonably communicate the terms of a passage contract affecting the

legal rights of the passenger); *De Nicola v. Cunard Line, Ltd.*, 642 F.2d 5, 8 (1st Cir. 1981); *Krenkel

v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009). In its current form, the test

states that a cruise ship passenger is bound by the terms of their passage contract so long as

those terms have been "reasonably communicated" to him.[6] *See, e.g.*, *Caron*, 910 F.3d at 1367;

*Ritcey v. NCL (Bahamas) Ltd.*, 796 F. Supp. 3d 1166, 1173, 1777 (S.D. Fla. 2025); *Williams v.

Carnival Corp.*, 576 F. Supp. 3d 1112, 1119 (S.D. Fla. 2021); *Chessen v. Am. Queen Steamboat

Operating Co.*, 461 F. Supp. 3d 845, 850 (S.D. Ind. 2020). Conversely, and as occurred in *The*

---

[6] To determine whether a term has been reasonably communicated such that it binds a cruise ship passenger, courts apply a two-factor test, looking first at the physical characteristics of the term on the ticket or contract and, second, at the passenger's opportunity to become meaningfully informed of the term. *See Caron*, 910 F.3d at 1367; *Ward v. Cross Sound Ferry*, 273 F.3d 520, 523–24 (2d Cir. 2001).

*Majestic*, a cruise passenger is not bound by the terms which are not reasonably communicated. *See The Majestic*, 166 U.S. at 385.

This test has been applied to various contract terms within cruise ship tickets, including: (1) the waiver of one's right to sue, *see Caron*, 910 F.3d at 1367; (2) limitations periods on filing suit, *see Williams*, 576 F. Supp. 3d at 1119, *and Muratore v. M/S Scotia Prince*, 845 F.2d 347, 351 (1st Cir. 1988); (3) liquidated damages clauses, *see Ritcey*, 796 F. Supp. 3d at 1177, *and Wallis v. Princess Cruises, Inc.*, 306 F.3d 827, 834 (9th Cir. 2002); and, as relevant here, (4) forum selection clauses, *see Effron v. Sun Line Cruises, Inc.*, 67 F.3d 7, 9 (2d Cir. 1995) (internal citations omitted). The one consistent fact in all these cases is that they involve disputes between a cruise line and one or more of its passengers over the effect of a term in the cruise ticket.

While provided a period for supplemental briefing, the Barkers have cited no cases which apply this reasonably communicated test in the context of a bareboat charter for a yacht. (ECF No. 31 at 2.) Nevertheless, they argue, without supporting authority, that the reasonably communicated test is transferable to this separate context. (*Id.*) At the hearing on this Motion (ECF No. 27) and in their Response to the Barkers' supplemental briefing (ECF No. 32), Defendants argue that this complete lack of caselaw reflects the material distinction between cruise ships and pleasure yachts. In their Supplemental Reply (ECF No. 33), the Barkers argue, again without caselaw to furnish their claim, that there are no relevant distinctions between cruise ship passengers and persons who book bareboat charters. (*Id.* at 2.)

There is, in fact, a significant difference. A bareboat charter for a yacht—in which the charterer is the pro hac vice owner of the vessel for the length of the charter term, *Matter of Wilson Yachts, LLC*, 605 F. Supp. 3d 695, 702–03 (D. Md. 2022) (citing *The Barnstable*, 181 U.S.

464, 468 (1901)—is far more like a contract for a rental car than a passenger ticket for a cruise ship. On the one hand, in the context of both a bareboat charter and a rental-car contract, the contracting party understands that he is responsible for the safe operation of the rented equipment and the safety of any passengers. He further understands, and indeed contracts to this end, that he hires the equipment without a crew (or, in the case of a rental car, a driver). The benefit to the contracting party in each of these scenarios is that he has the freedom to use the rented yacht or car as he wishes. He is not bound by the itinerary of a common carrier, nor by any other constraints associated with booking a preexisting passage.

On the other hand, a person who purchases a ticket for passage on a preexisting cruise is meaningfully similar to a person who books passage on a bus line. In both contexts, the passenger enjoys the benefits that come with not operating any equipment himself: he is not responsible for either the safe handling of the equipment or the safety of any fellow passengers. In exchange for decreased responsibility and liability, he consents to being bound by the itinerary, schedule, and other non-negotiable features of the cruise or bus line.

While bareboat charters and cruises both involve sea travel and fall within the admiralty jurisdiction of the federal courts, they are meaningfully different in their legal ramifications. As Defendants noted in both the hearing on this Motion (ECF No. 27) and in their supplemental briefing (ECF No. 32), there are special and obvious consumer protection concerns pertaining to cruise ships (as common carriers) that do not pertain to bareboat charters. Indeed, the main thrust of the "reasonably communicated" cruise ship cases is a concern from the courts for fairness to cruise ship passengers. *See, e.g.*, *The Majestic*, 166 U.S. at 386 (noting, among other concerns, that the cruise line's limitation on liability for damaged

luggage did not "strike [the Court] as exactly reasonable" given the express allotment for luggage space in the booking contract).

As the Second Circuit explained in *Silvestri v. Italia Societa per Azioni di Navigazione*, a seminal decision in the development of the reasonably communicated test, "the thread that runs through the cases [like *The Majestic*] is that the steamship line had done all it reasonably could *to warn* the passenger that the terms and conditions were *important matters of contract affecting his legal rights*." 388 F.2d at 17 (emphasis added). Put differently, the reasonably communicated test exists in recognition of the relative bargaining positions of the cruise lines and their passengers. The cruise lines are entitled to set terms for passengers to follow, but passengers are only bound by those terms after they have been reasonably communicated by the cruise lines. For all the reasons already stated, however, these same consumer protection concerns do not apply in equal measure to bareboat charter contracts. As such, there is nothing intrinsic to bareboat charters that automatically justifies transplanting the consumer protection law of cruise ships to this separate context.

In their supplemental briefing, the Barkers point to two cruise ship cases in which tour companies or tour leaders acted as middlemen, booking passage on cruise ships for multiple passengers who never saw the tickets themselves. (ECF No. 31 at 7.) They argue that these cases weigh in favor of the Court applying the reasonably communicated test to the context of a bareboat charter. (*Id.*) The first case is *Muratore v. M/S Scotia Prince*, 845 F.2d 347 (1st Cir. 1988). The second is *Kientzler v. Sun Line Greece Special Shipping Co.*, 779 F. Supp. 342 (S.D.N.Y. 1991). Each of these cases discusses the legal difference between an agent booking a cruise ship ticket for the benefit of a principal versus a tour company booking multiple cruise ship

tickets for a tour group. *See Kientzler*, 779 F. Supp. at 346 (discussing *Muratore*). In each case, the relevant court concluded that terms reasonably communicated to an agent are imputed to the principal, but that a cruise line bears the responsibility for reasonably communicating terms to any passengers that booked tickets via a tour company. *Id.*

The Barkers argue that the circumstances of this case are sufficiently similar to *Kientzler* and *Muratore* to merit applying the reasonably communicated test here. (ECF No. 31 at 7–8.) They assert that Ziskind's act of entering the bareboat charter contract for the entire travelling party, including the Barkers, is the same as a tour company booking cruise tickets for multiple passengers. (*Id.* at 7–8.) They argue that, because Ziskind allegedly acted as a de facto tour leader, Defendants were obligated under *Kientzler* and *Muratore* to reasonably communicate the terms of the bareboat charter to the entire travelling group. (*Id.* at 7–8.)

This argument fails because, at minimum, it skips over the preliminary and fundamental hurdle identified above: the Barkers do not bridge the doctrinal gap between passenger tickets for cruises and bareboat charters for yachts. They do not demonstrate that these contexts are so similar that the transfer of the reasonably communicated test from one to the other would be merited. As the Court has already explained, these contexts are not similar. They have distinct legal parameters and concerns. The Court's analysis does not change simply because the Barkers make the unsubstantiated argument that Ziskind acted like a tour operator when he alone signed the bareboat charter with Defendants.[7] In sum, for the reasons set forth above,

---

[7] Although this point is not dispositive because the Court rules that the reasonably-communicated test does not apply to bareboat charters for yachts, the Court nevertheless notes that there is nothing in the record to support the argument that Ziskind was acting as a tour operator. Nothing in the record indicates that he was providing a service of booking the trip to the rest of his travel party.

the Court holds that the reasonably communicated test of cruise ship ticket cases does not apply in the context of a bareboat charter for a yacht.

## II.    Dismissal Pursuant to the Doctrine of *Forum Non Conveniens*

As noted above, the Barkers' only argument in opposition to Defendants' Motion to Dismiss for *Forum Non Conveniens* is that, pursuant to the reasonably communicated test, the forum-selection clause did not bind them. (ECF No. 19 at 5.) As such, it is undisputed that the forum-selection clause is mandatory and reasonable. In *Atlantic Marine Construction Co.*, the Supreme Court held that "[t]he appropriate way to enforce a forum-selection clause pointing to a . . . foreign forum is through the doctrine of *forum non conveniens*." 571 U.S. at 60. Further, it is well-settled that federal courts must enforce a forum-selection clause in all but the most extraordinary case, in which doing so would be patently unreasonable and unjust. *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972) ("[W]e conclude that the forum clause should control absent a strong showing that it should be set aside."); *Atl. Marine*, 571 U.S. at 60 (quoting *Stewart Org.*, 487 U.S. at 37 (ruling that "a forum-selection clause be 'given controlling weight in all but the most exceptional cases'")). Pursuant to the doctrine of *forum non conveniens* and the Supreme Court's clear holding in *Atlantic Marine*, this case is DISMISSED.

## CONCLUSION

For the reasons stated on the record at the hearing of February 13, 2026 (ECF No. 27), and as expounded above, the Motion to Dismiss for *Forum Non Conveniens* (ECF No. 12) filed by Defendant Dream Yacht Charter and Defendant Dream Yacht Americas, Inc., is GRANTED. The case is DISMISSED.

A separate Order follows.

Date: March 31, 2026

_____/s/_____
Richard D. Bennett
United States Senior District Judge

15